IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SHAHNAZ LILANI,                       §
                                      §
            Plaintiff,                §
                                      §    CIVIL ACTION NO. H-09-2617
v.                                    §
                                      §
SALEEM NOORALI, ZEENAT NOORALI,       §
and PRESCHOOL INC. d/b/a BUSY         §
BEE DAY CARE SCHOOL,                  §
                                      §
            Defendants.               §

## MEMORANDUM OPINION AND ORDER

Shahnaz Lilani brings this action against Saleem Noorali, Zeenat Noorali, and Preschool Inc. d/b/a Busy Bee Day Care School ("Preschool Inc.") (collectively, the "Defendants") alleging (1) that the Defendants refuse to repay money Lilani allegedly lent the Nooralis in 2008 and refuse to pay Lilani for wages she earned as an employee of Preschool Inc., or (2) alternatively, if the money transfer is deemed an investment, that the Defendants have failed to issue shares of stock to Lilani and have failed to provide accountings to Lilani for fundamental transactions. Pending before the court are Defendants' Motion for Summary Judgment and Consolidated Brief ("Defendants' Summary-Judgment Motion") (Docket Entry No. 36); Plaintiff's Opposed Motion for Leave to Supplement Plaintiff's Response to Defendants' Motion for Summary Judgment ("Plaintiff's Motion for Leave to Supplement") (Docket Entry No. 50); Defendants' Motion to Quash, Motion for Protective Order and Motion for Sanctions (Docket Entry No. 52);

Defendants' Motion to Disqualify Plaintiff's Counsel (Docket Entry
No. 57); and Plaintiff's Motion for Sanctions (Docket Entry
No. 58).  For the reasons explained below, the court will grant in
part and deny in part the Defendants' Summary-Judgment Motion; will
grant the Plaintiff's Motion for Leave to Supplement; will deny the
Defendants' Motion to Quash, Motion for Protective Order, and
Motion for Sanctions; will deny the Defendants' Motion to
Disqualify Plaintiff's Counsel; and will deny the Plaintiff's
Motion for Sanctions.


## I.  Factual and Procedural Background

### A.  Underlying Facts

This action concerns a dispute over money that Lilani
transferred to the Defendants in 2008 and that was used to improve
the business of Preschool Inc., a Texas corporation.  Lilani
alleges that the money transfer was a loan, allowing Zeenat Noorali
to acquire a 100% interest in the corporation,[1] while the
Defendants contend that it was an investment.[2]

Plaintiff Shahnaz Lilani, Defendant Zeenat Noorali, and
Roshanara Lilani, who is not a party to this action, are sisters.[3]

_____

[1]Plaintiff's Second Amended Complaint, Docket Entry
No. 45, ¶¶ 8-9.

[2]Defendants' Summary-Judgment Motion, Docket Entry No. 36,
¶ 13.

[3]Affidavit of Zeenat Noorali, Exhibit E to Defendants'
Summary-Judgment Motion, Docket Entry No. 36, ¶ 2.

Before the events giving rise to this action, Roshanara Lilani and
Zeenat Noorali organized and incorporated Preschool Inc., a day-
care center located in Houston.[4]   Both sisters were 50%
shareholders of Preschool Inc.[5]   In mid-2008 Roshanara Lilani
expressed a desire to withdraw from the business, and she assigned
her 50% interest to Zeenat Noorali in exchange for approximately
$77,000.[6]  Shahnaz Lilani testified that she helped Zeenat Noorali
with the purchase by lending her and Preschool Inc. approximately
$90,000 between June and October of 2008, with the understanding
that they would eventually repay the loan.[7]   The Defendants agree
that they received funds from Shahnaz Lilani, but they contend that
Shahnaz Lilani was investing in Preschool Inc.   Zeenat Noorali
testified that in June of 2008 "[Shahnaz Lilani] began investing in
the business, which was struggling."[8]

The parties also do not dispute that Shahnaz Lilani worked at
Preschool Inc. beginning in the summer of 2008 as Assistant

---

[4]Id.

[5]Deposition of Zeenat Noorali, Document 42-1 of Plaintiff's
Response to Defendant's Motion for Summary Judgment and Brief on
Order to Show Cause ("Plaintiff's Summary-Judgment Response"),
Docket Entry No. 42, pp. 31:14-32:7.

[6]Affidavit of Zeenat Noorali, Exhibit E to Defendants'
Summary-Judgment Motion, Docket Entry No. 36, ¶ 2; Deposition of
Zeenat Noorali, Document 42-1 of Plaintiff's Summary-Judgment
Response, Docket Entry No. 42, p. 140:10-25.

[7]Affidavit of Shahnaz Lilani, Document 42-2 to Plaintiff's
Summary-Judgment Response, Docket Entry No. 42, ¶¶ 8-9.

[8]Affidavit of Zeenat Noorali, Exhibit E to Defendants'
Summary-Judgment Motion, Docket Entry No. 36, ¶ 2.

Director.[9]  But while Shahnaz Lilani asserts that she agreed to
work at Preschool Inc. as a paid employee,[10] the Defendants argue
that Shahnaz Lilani contributed to Preschool Inc.'s operations so
she could receive a return on her investment.[11]  In November of 2008
the Nooralis moved to California after Zeenat Noorali learned of an
employment opportunity with the California Department of
Developmental Services.[12]  Zeenat Noorali testified that she sought
advice about the opportunity from Shahnaz Lilani and that Lilani
agreed that the Nooralis "should move to California and accept jobs
there,"[13] but Shahnaz Lilani states that she was "simply informed"
of the decision after it had been made.[14]  On February 9, 2009, the
Nooralis executed a three-year lease agreement with Samina Hashmi
and Fauzia Farooqui, pursuant to which the lessees agreed to make
a one-time goodwill payment to Preschool Inc. of $42,500, and

---

[9]Renewal Application and Management Plan for Child Care
Centers, Document 42-14 to Plaintiff's Summary-Judgment Response,
Docket Entry No. 42, pp. 8, 11; Deposition of Shahnaz Lilani,
Document 42-8 to Plaintiff's Summary Judgment Response, Docket
Entry No. 42, p. 47:24-25.

[10]Affidavit of Shahnaz Lilani, Document 42-2 to Plaintiff's
Summary-Judgment Response, Docket Entry No. 42, ¶ 13.

[11]Defendants' Summary-Judgment Response, Docket Entry No. 36,
¶¶ 14-17.  See also Affidavit of Terrence J. Romney, Exhibit D to
Defendants' Summary-Judgment Motion, Docket Entry No. 36, ¶ 5.

[12]Affidavit of Zeenat Noorali, Exhibit E to Defendants'
Summary-Judgment Motion, Docket Entry No. 36, ¶ 3.

[13]Affidavit of Zeenat Noorali, Exhibit E to Defendants'
Summary-Judgment Motion, Docket Entry No. 36, ¶ 3.

[14]Affidavit of Shahnaz Lilani, Document 42-2 to Plaintiff's
Summary-Judgment Response, Docket Entry No. 42, ¶ 11.

monthly rent of $5,000 for the first year and $5,250 for the remaining two years.[15]   Around the same time Shahnaz Lilani stopped working for Preschool Inc.[16]


## B.   Procedural History

Shahnaz Lilani commenced this action on June 10, 2009, in Texas state court, and the Defendants filed a Notice of Removal on August 17, 2009.[17]   The Defendants allege that this court has original jurisdiction under 28 U.S.C. § 1331 because Lilani has alleged causes of action that arise under federal statute.[18] Lilani's Second Amended Complaint alleges seven causes of action arising from the Defendants' allegedly wrongful withholding of loan-repayment funds and employment wages, and two causes of action, pleaded alternatively, arising from the Defendants' alleged failure to fulfill corporate responsibilities.[19]   The Defendants

---

[15]Busy Bee Property and Fixture Lease, Document 42-11 to Plaintiff's Summary-Judgment Response, Docket Entry No. 42, pp. 1, 5.

[16]Affidavit of Shahnaz Lilani, Document 42-2 to Plaintiff's Summary-Judgment Response, Docket Entry No. 42, ¶ 20.

[17]Defendants' Notice of Removal, Docket Entry No. 1, ¶ 1.

[18]Id. ¶ 4.

[19]Plaintiffs' Second Amended Complaint, Docket Entry No. 45, ¶¶ 14–65.   The court will not address the Defendants' summary-judgment arguments that pertain to the seven causes of action Lilani alleged in her First Amended Complaint that were abandoned in her Second Amended Complaint.

move for summary judgment on all of Lilani's alleged causes of action.[20]

## II.  __Standard of Review__

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  FED. R. CIV. P. 56(a).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S. Ct. at 2553-54).  If the moving party meets this burden, Rule 56(c) requires the nonmovant to show that specific facts exist over which there is a genuine issue for trial.  Id. (citing

---

[20]Defendants' Summary Judgment Motion, Docket Entry No. 36.

Celotex, 106 S. Ct. at 2553–54).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by either (1) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, admissions, and interrogatory answers; or (2) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.  FED. R. Civ. P. 56(c)(1)(A)–(B).  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods. Inc., 120 S. Ct. 2097, 2110 (2000).

When a party chooses not to respond to all or part of a summary-judgment movant's validly supported motion, the court will not merely enter a "default" summary judgment, but it may accept as undisputed the facts the movant provides in support of its motion. See Eversley v. MBank Dallas, 843 F.2d 172, 173–74 (5th Cir. 1988) (finding that when the plaintiff failed to oppose the defendant's motion for summary judgment, the district court "did not err in granting the motion" because the motion established a prima facie showing of the defendant's entitlement to judgment).

### III.   <u>Summary-Judgment Analysis</u>

**A.   The Admissibility of Submitted Summary-Judgment Evidence**

Both parties submit evidentiary support for their summary-judgment arguments, including answers to interrogatories, excerpts of deposition transcripts, affidavits, tax documents, e-mails, and financial records.  The Defendants object that much of the evidence Lilani submitted with her Summary-Judgment Response is inadmissible and should therefore not be considered in determining whether summary judgment is appropriate.[21]

The court, in formulating its conclusions, can consider summary-judgment evidence, which includes "depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c)(1)(A), but a party may object that the evidence on which another party relies for a factual assertion "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  <u>See also</u> <u>Fowler v. Smith</u>, 68 F.3d 124, 126 (5th Cir. 1995) ("Evidence on summary judgment may be considered to the extent not based on hearsay or other information excludable at trial.").

---

[21]Defendants' Objections to Plaintiff's Response and Evidence Attached to Its Response to Defendants' Motion for Summary Judgment ("Defendants' Objections"), Docket Entry No. 46.

1.   <u>Affidavit of Shahnaz Lilani</u>

The Defendants argue that the court should disregard most of Lilani's affidavit because (1) it contains portions that "contradict[] the affiant's earlier testimony for the sole purpose of creating a fact issue to prevent summary judgment," and thus constitutes a "sham affidavit"; and (2) it contains statements that are "conclusory, speculative and lacking a foundation."[22]

A party cannot "defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." <u>S.W.S. Erectors, Inc. v. Infax, Inc.</u>, 72 F.3d 489, 496 (5th Cir. 1996). On November 4, 2010, Lilani testified in an affidavit that the loan's maturity date was "within six (6) to twelve (12) months of the loan," and that she transferred the funds to the Defendants "with the understanding that [the Defendants] would pay [Lilani] back within six (6) months to a year."[23]  Previously, however, on September 27, 2010, Lilani testified in her deposition that the parties did not discuss a repayment schedule and that Lilani had an expectation that the money would be repaid within a year, and perhaps within more than a year.[24]  Since Lilani does not provide evidentiary support for the assertions in her affidavit the court will disregard them and will consider only Lilani's previous

---

[22]<u>Id.</u> at 3-4.

[23]Affidavit of Shahnaz Lilani, Document 42-2 to Plaintiff's Summary-Judgment Response, Docket Entry No. 42, ¶¶ 8-9.

[24]Deposition of Shahnaz Lilani, Exhibit C to Defendants' Summary-Judgment Motion, Docket Entry No. 36, pp. 63:19-64:18.

deposition testimony with respect to the issue of repayment.  The court concludes that the remaining portions of Lilani's affidavit, which do not contradict prior sworn testimony and which concern events and facts that would reasonably fall within Lilani's personal knowledge, should not be excluded from the court's summary-judgment determinations.

2.  <u>Admissibility of the Remaining Exhibits</u>

The Defendants also contend that twelve additional exhibits should be disregarded because they are hearsay and have not been authenticated.[25]  With respect to the exhibits' authenticity, Lilani supplemented her Summary-Judgment Response with affidavits from herself and her attorney, Digant Jariwala, which identified the source of each document and certified that each document is a "true and correct" copy.[26]  The Defendants do not dispute Lilani's assertion that the documents were produced by the Defendants or other companies during discovery, nor do they dispute that the documents are true and accurate copies of the originals.  Because the Fifth Circuit "does not require conclusive proof of authenticity before allowing the admission of disputed evidence," <u>United States v. Arce</u>, 997 F.2d 1123, 1128 (5th Cir. 1993), the

---

[25]Defendants' Objections, Docket Entry No. 46, pp. 5–7.

[26]Affidavit of Shahnaz Lilani, Exhibit 1 to Plaintiff's Supplemental Response to Defendants' Motion for Summary Judgment ("Plaintiff's Supplemental Response"), Docket Entry No. 51; Affidavit of Digant Jariwala, Exhibit 2 to Plaintiff's Supplemental Response, Docket Entry No. 51.

court concludes that for the purposes of this motion Lilani has sufficiently authenticated these documents.

Statements offered against a party that are (1) the party's own statements, "in either an individual or a representative capacity," (2) statements "of which the party has manifested an adoption or belief in [their] truth," (3) statements by "a person authorized by the party to make statements," or (4) statements "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" are admissions by a party-opponent and therefore are not hearsay. Fed. R. Evid. 801(d)(2). Six of the twelve exhibits in question are tax forms and financial documents that were produced by the Defendants through discovery. They contain the Defendants' writings and statements, and some include one or both of the Nooralis' signatures, which makes other statements admissible as adopted admissions. Accordingly, the court rejects the Defendants' hearsay objections to Exhibit 3 (Preschool Inc.'s 2008 tax return), Exhibit 7 (Preschool Inc.'s balance sheets), Exhibit 11 (lease agreement for which Preschool Inc. is the lessor), Exhibit 12 (loan documents in which Zeenat Noorali was the borrower and Lilani was the guarantor), Exhibit 13 (Preschool Inc.'s quarterly report), Exhibit 16 (Lilani's W-2 from Preschool Inc.), and Exhibit 18 (Preschool Inc.'s franchise-tax reports) to the extent these documents constitute admissions by party-opponents.

The court likewise rejects the Defendants' hearsay objections to Exhibits 4 and 5, e-mails written by Saleem and Zeenat Noorali, because they are admissions by party-opponents.  The Defendants argue that the e-mails are also inadmissible because they represent "offers to compromise" and are therefore excluded by Federal Rule of Evidence 408.[27]  Rule 408 makes inadmissable certain evidence that is "offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount" including offers of valuable consideration in an attempt to compromise the claim and statements made in compromise negotiations regarding the claim.  Fed. R. Evid. 408(a)(1)-(2).  "This protection extends to legal conclusions, factual statements, internal memoranda, and the work of non-lawyers and lawyers alike so long as the communications were 'intended to be part of . . . negotiations toward compromise.'"  Lyondell Chem. Co. v. Occidental, 608 F.3d 284, 295 (5th Cir. 2010) (quoting Ramada Dev. Co. v. Rauch, 644 F.2d 1097, 1106-07 (5th Cir. 1981)).  Since the e-mails specifically discuss the types of consideration the Nooralis were willing to give Lilani as a compromise, the court will not consider these emails to the extent Lilani offers them to prove her claim.

The court will also disregard Exhibit 6 (assignment of shares of Preschool Inc. from Roshanara Lilani to Zeenat Noorali) because it is hearsay and Lilani has not proffered any argument as to how the documents are admissible as exceptions to hearsay.  With

---

[27]Defendants' Objections, Docket Entry No. 46, p. 5.

respect to Exhibit 9 (Lilani's bank records), the court concludes that although the documents may contain some hearsay statements, Lilani's checks are not hearsay to the extent they indicate Lilani's purpose in writing the checks.  Such evidence is offered not for the truth of the matters asserted within the checks, but to prove Lilani's state of mind when she wrote the checks — *i.e.*, whether she thought the money transfer was a loan or an investment. The court concludes that Exhibit 15, which is the affidavit of Fatimah Nomani, a former employee of Preschool Inc., is competent summary-judgment evidence and is admissible with the exception of the hearsay statements that make up paragraph eight.[28]  Fed. R. Civ. P. 56(c)(1)(A).

## B.  Lilani's Claims Relating to Breach of the Loan Agreement

Lilani alleges the following causes of action in connection with the money she allegedly lent the Defendants and the work she performed as Assistant Director of Preschool, Inc.:  (1) breach of contract, (2) fraud and fraudulent inducement, (3) unjust

---

[28]Paragraph eight of the affidavit relates statements the affiant heard from Lilani, and contains a statement that Zeenat Noorali made to Lilani.  While Noorali's statement by itself would be a party-opponent admission, the fact remains that Lilani's statements are hearsay and therefore inadmissible.  The court concludes that Lilani's tardy disclosure of Fatimah Nomani as a person likely to have discoverable information does not unduly prejudice the Defendants because the testimony does not create new issues and because the identity of Nomani was known to Noorali since Nomani was an employee of Preschool Inc. during the time that Zeenat Noorali was the director.

enrichment, (4) quantum meruit, (5) promissory estoppel, (6) failure to justly compensate Lilani for her work as an employee at Preschool Inc., and (7) an action to "pierce the corporate veil" to hold Zeenat Noorali independently liable for using Preschool Inc. as her "alter ego" and to perpetuate a fraud.[29]

    1.   <u>Breach of the Loan Agreement</u>

Lilani alleges that the Defendants' refusal to repay the loan constitutes breach of contract.[30]  The parties do not dispute that whatever agreements were made were formed orally.  The Defendants argue they are entitled to summary judgment on this claim because the "alleged contract lacks material terms and is too ambiguous and indefinite to enforce."[31]

    (a)  Applicable Law

To recover in a breach of contract case in Texas a plaintiff must prove that (1) a valid contract existed; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach.  <u>Mays v. Pierce</u>, 203 S.W.3d 564, 575 (Tex. App—Houston [14th Dist.] 2006, pet. denied).  Parties form a binding contract when the following elements are present: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a

---

[29]Plaintiff's Second Amended Complaint, Docket Entry No. 45, ¶¶ 18–48.

[30]Id. ¶¶ 19, 8-21.

[31]Defendants' Summary-Judgment Motion, Docket Entry No. 36, ¶ 22.

meeting of the minds; (4) each party's mutual consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. <u>Prime Prods., Inc. v. S.S.I. Plastics, Inc.</u>, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). In determining the existence of an oral contract, Texas courts look to the communications between the parties and to the acts and circumstances surrounding those communications. <u>Id.</u> To be legally binding, a contract also must be sufficiently definite in its terms so that a court can understand what the promissor undertook. <u>T.O. Stanley Boot Co. v. Bank of El Paso</u>, 847 S.W.2d 218, 221 (Tex. 1992). In a contract to loan money, the material terms will generally be: the amount to be loaned, the maturity date of the loan, the interest rate, and the repayment terms. <u>Id.</u> Each contract, however, should be considered separately to determine its material terms. <u>Id.</u>

    (b)   A Genuine Factual Dispute Exists as to Whether Lilani Entered Into a Loan Agreement With One or More of the Defendants

The Defendants argue that the alleged loan agreement's lack of an agreed interest rate and repayment plan make it "too ambiguous and too indefinite to enforce."[32] But the cases cited by the Defendants, which state that material terms generally include a maturity date, an interest rate, and repayment terms, involved one person or entity allegedly entering into an arms-length loan

---

[32]Id. ¶¶ 22–25.

agreement with a bank or creditor.   See <u>T.O. Stanley Boot Co.</u>,
847 S.W.2d at 220–22 (holding that an alleged arms-length loan
agreement between a bootmaking company and a bank "failed for
indefiniteness" because it lacked an interest rate and repayment
terms); <u>Williams v. Unifund CCR Partners Assignee of Citibank</u>,
264 S.W.3d 231, 236–37 (Tex. App.—Houston [1st Dist.] 2008, no
pet.) (holding that the evidence was insufficient to establish the
terms of a loan agreement between a borrower and a corporate
creditor because there was no evidence of an agreed interest rate).

The circumstances underlying the alleged loan agreement in
this action differ markedly.   The parties do not dispute that
Shahnaz Lilani, from whom the money originated, and Zeenat Noorali,
whose business benefitted from the transfer, are sisters.   The
parties also do not dispute that the money was transferred and that
Lilani has not been repaid.   Lilani testified that she did not
discuss interest rates with her sister when she gave the Defendants
the money but that she expected, pursuant to their oral agreement,
to be repaid within approximately one year.[33]   Although definite
interest rates and repayment schedules are "generally" considered
"material" terms, they are not required.   See <u>Ameristar Jet
Charter, Inc. v. Cope</u>, 2001 WL 950978, at *4 (Tex. App.—Dallas
2001, no pet.) (concluding that the lack of a set interest rate was
not material because the parties never agreed that the repayment of

---

[33]Deposition of Shahnaz Lilani, Exhibit C to Defendants'
Summary-Judgment Motion, Docket Entry No. 36, pp. 62:3–67:21.

the debt would include interest). Each contract should be considered separately to determine its material terms. T.O. Stanley Boot Co., 847 S.W.2d at 222. A jury could reasonably conclude that a loan agreement was reached between Lilani and the Defendants without a set interest rate or a specific repayment schedule because the agreement was between family members. The possibility that Lilani would lend such funds to her sister without including terms normally found in arms-length agreements is made even more likely by the Nooralis' statements during their depositions that the Nooralis had previously borrowed money from family members without any documentation cementing the terms of the agreements.[34] Based on the record, a reasonable jury could conclude that the $94,000 Lilani transferred to the Defendants was not an investment in Preschool Inc., as the Defendants contend,[35] but rather an interest-free loan to help a family member's struggling

---

[34]Deposition of Zeenat Noorali, Document 42-1 to Plaintiff's Summary-Judgment Response, Docket Entry No. 42, pp. 38:9-25, 40:1-12; Deposition of Saleem Noorali, Document 42-10 to Plaintiff's Summary-Judgment Response, Docket Entry No. 42, p. 61:19-22.

[35]The court is not persuaded by the Defendants' argument that the Nooralis are more entitled to summary judgment than Preschool Inc. merely because Lilani testified that she knew the funds were going to be used for the use and benefit of Preschool Inc. Defendants' Summary-Judgment Motion, Docket Entry No. 36, ¶ 25. Zeenat Noorali was a representative of Preschool Inc. since she was a founder and director, and when Preschool Inc. leased its space in February of 2009, both Zeenat and Saleem Noorali signed the lease agreement as the "lessors." Busy Bee Property and Fixture Lease, Document 42-11 to Plaintiff's Summary-Judgment Response, Docket Entry No. 42, p. 5. Both Zeenat and Saleem Noorali were involved in managing Preschool Inc.'s administrative affairs.

business, lent with the expectation that the money would be repaid within approximately one year.  The court will therefore deny the Defendants' Summary-Judgment Motion with respect to Lilani's breach-of-contract claim pertaining to the loan agreement.

2.   Breach of the Employment Contract and Claim for Unpaid Wages and Overtime

Lilani alleges in Count One of her Second Amended Complaint that the "Defendants breached the contract and agreements entered into with Plaintiff," which Lilani argues includes a claim for breach of the employment contract in addition to Lilani's claim for breach of the loan agreement.[36]  Count One "adopts each and every preceding paragraph" in the Complaint, which includes Lilani's allegation that she has not "received wages and overtime owed to her for her employment" with Preschool Inc.[37]  Lilani clarifies the scope of her claim in her Summary-Judgment Surreply by stating that the Defendants breached the employment contract because they "failed to pay her fair wages."[38]  Separate and apart from her breach-of-contract claim, Lilani alleges in Count Seven that she "has not been paid the balance of wages or overtime owed to her"

---

[36]Plaintiffs' Surreply to Defendants' Motion for Summary Judgment ("Plaintiffs' Summary-Judgment Surreply"), Docket Entry No. 54, ¶¶ 15–19.

[37]Plaintiffs' Second Amended Complaint, Docket Entry No. 45, ¶¶ 16–17.

[38]Plaintiffs' Summary-Judgment Surreply, Docket Entry No. 54, ¶ 19.

-18-

from her employment with Preschool Inc.[39]  The parties agree that Lilani's allegations in Count Seven embody FLSA claims for unpaid minimum wages and for unpaid overtime compensation.[40]  The Defendants argue that Lilani's claim for breach of the employment contract is preempted by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, <u>et seq.</u>, or alternatively, that there is no evidence of an employment agreement.[41]  With respect to the FLSA claims, the Defendants argue that Lilani is exempt from recovering under the FLSA because she worked for Preschool Inc. in a bona fide executive or administrative capacity.[42]

> (a)  Lilani's Claim for Breach of the Employment Contract is Preempted by the FLSA

Congress may preempt state law either expressly or implicitly. <u>Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry</u>, 476 F.3d 326, 333 (5th Cir. 2007).  Implied preemption may occur when Congress either directly conflicts with state law (conflict preemption) or occupies a field so pervasively as to naturally exclude state law (field preemption).  <u>Id.</u>  Since the FLSA does not expressly preempt state law and since field preemption is

---

[39]<u>Id.</u> ¶¶ 39–44.

[40]<u>See</u> Plaintiff's Summary-Judgment Response, Docket Entry No. 42, ¶¶ 47–83; Defendants' Summary-Judgment Motion, Docket Entry No. 36, ¶¶ 41–61.

[41]Defendants' Summary-Judgment Motion, Docket Entry No. 36, ¶ 26.

[42]<u>Id.</u> ¶¶ 41–42.

inapposite to these facts, the court will analyze the Defendants' assertion under the doctrine of conflict preemption. Conflict preemption requires that it be "physically impossible" to comply with both federal and state law, or that state law impede "the accomplishment and execution of the full purposes and objectives of Congress." Id. at 334 (citations omitted). When a preemption issue arises, the court's "task is to ascertain the intent of Congress." Tex. Midstream Gas Servs., LLC v. City of Grand Prairie, 608 F.3d 200, 210 (5th Cir. 2010). Courts must apply a presumption against the preemption of state police-power regulations affecting matters of health and safety. Medtronic, Inc. v. Lohr, 116 S. Ct. 2240, 2245, 2250 (1996).

Lilani alleges that Preschool Inc. breached the employment contract by failing to pay her fair wages for the performance of her employment duties.[43]   The Fifth Circuit has not addressed whether the FLSA preempts state-law claims premised on a right conferred by the FLSA (i.e., the right to receive fair wages). Courts within this Circuit that have addressed the issue have concluded that such state-law claims, which include claims for breach of contract, unjust enrichment, and quantum meruit, are preempted by the FLSA. See, e.g., Guerrero v. JPMorgan Chase & Co., 2010 WL 457 144, at *3-4 (E.D. Tex. Feb. 5, 2010) (concluding that the plaintiff's state-law claims for breach of contract,

---

[43]Plaintiff's Summary-Judgment Surreply, Docket Entry No. 54, ¶ 19.

unjust enrichment, and quantum meruit were predicated on violations of the FLSA and were therefore preempted by the FLSA); Botello v. COI Telecom, LLC, 2010 WL 3784202, at *4 (W.D. Tex. Sept. 21, 2010) (same with respect to a state-law claim for unjust enrichment); Anderson v. Sara Lee Corp., 508 F.3d 181, 192-95 (4th Cir. 2007) (same with respect to state-law claims for breach of contract, negligence, and fraud).

The FLSA permits employees to bring causes of action against their employer for unpaid minimum wages and unpaid overtime compensation, as well as for liquidated damages, attorneys' fees, and court costs. Id. §§ 206(a), 207(a), 216(b). Similarly, Lilani seeks "fair wages" and attorneys' fees through her breach-of-contract claim.[44] But because under the FLSA an employee's right of action against an employer is terminated when the Secretary of Labor commences an action against the same employer, courts have concluded that Congress intended for the remedies prescribed in the FLSA to be exclusive. See Guerrero, 2010 WL 457144, at *4; Botello, 2010 WL 3784202, at *4; O'Quinn v. Chambers Cnty., Tex., 636 F. Supp. 1388, 1392 (S.D. Tex. 1986); Anderson, 508 F.3d at 194. Lilani's breach-of-contract claim relies on the FLSA with respect to her right to receive fair wages, and invokes Texas contract law only as the source of remedies for the alleged infringement of that right.

---

[44] See Plaintiff's Second Amended Complaint, Docket Entry No. 45, ¶¶ 65-66; Plaintiff's Summary-Judgment Surreply, Docket Entry No. 54, ¶ 19.

The court agrees with the reasoning employed by other courts within this Circuit and in other Circuits and concludes that Lilani's breach-of-contract cause of action, to the extent it seeks unpaid minimum wages or overtime compensation, is preempted by the FLSA because it is duplicative and would impede "the accomplishment and execution of the full purposes and objectives of Congress." Empacadora de Carnes de Fresnillo, 476 F.3d at 333.

        (b)   Genuine Factual Disputes Exist With Respect to Lilani's FLSA Claims

        (i)  Applicable Law

Lilani alleges that she has "not been paid the balance of wages or overtime owed to her" from her work as an employee of Preschool Inc.[45]  The FLSA requires certain employers to abide by minimum wage and maximum hour restrictions.  See 29 U.S.C. §§ 206-07.  Section 206(a)(1) requires employers to pay qualifying employees a minimum of $7.25 an hour.  The overtime provision of the FLSA requires employers to pay one and one-half times the employee's regular rate for all hours worked in excess of forty hours per week.  Id. § 207(a).  In order to prevail on a claim for unpaid minimum wages or overtime, a plaintiff must prove by a preponderance of the evidence: (1) the existence of an employment relationship; (2) that the employee was engaged in commerce or employed by an enterprise engaged in commerce; (3) that defendants

---

[45]Plaintiff's Second Amended Complaint, Docket Entry No. 45, ¶ 40.

failed to pay the employee minimum wages or overtime required by the FLSA; and (4) that the employee is owed the amount claimed by a just and reasonable inference. Id. §§ 206-07. See also Harvill v. Westward Comm'cns, L.L.C., 433 F.3d 428, 441 (5th Cir. 2005) (citing Anderson v. Mt. Clemens Pottery Co., 66 S. Ct. 1187, 1192-93 (1946), superseded by statute as stated in IBP, Inc. v. Alvarez, 126 S. Ct. 514, 516 (2005)).

Employees are precluded from bringing a cause of action under these provisions, however, if they were "employed in a bona fide executive, administrative, or professional capacity." Id. § 213(a)(1). The Defendants argue that Lilani was both an administrative and executive employee.[46] An employee is "employed in a bona fide executive" capacity if (1) the employee is compensated "on a salary basis at a rate of not less than $455 per week"; (2) the employee's "primary duty" is "management of the enterprise" or of a "customarily recognized department or subdivision thereof"; (3) the employee "customarily and regularly directs the work of two or more other employees"; and (4) the employee "has the authority to hire or fire other employees or whose suggestions and recommendations" as to other employees' change of status are "given particular weight." 29 C.F.R. § 541.100(a). An employee is "employed in a bona fide administrative" capacity if (1) the employee is compensated "on a

---

[46]Defendants' Summary-Judgment Motion, Docket Entry No. 36, ¶¶ 41-61.

salary or fee basis at a rate of not less than $455 per week";
(2) the employee's "primary duty" is the "performance of office or
non-manual work directly related to the management or general
business operations of the employer or the employer's customers";
and (3) the employee's "primary duty includes the exercise of
discretion and independent judgment with respect to matters of
significance." Id. § 541.200(a).

     FLSA exemptions are construed narrowly, and the burden of
proof lies with the employer. Cheatham v. Allstate Ins. Co.,
465 F.3d 578, 584 (5th Cir. 2006). See also Arnold v. Ben
Kanowsky, Inc., 80 S. Ct. 453, 456 (1960). Whether an employee is
exempt from the FLSA's provisions is primarily a question of fact,
but the ultimate decision of whether the employee is exempt is a
question of law. Lott v. Howard Wilson Chrysler-Plymouth, Inc.,
203 F.3d 326, 330 (5th Cir. 2000).

                    (ii)     Whether Lilani Was Compensated on a
                             Salary Basis at a Rate of Not Less Than
                             $455 Per Week

     The Department of Labor explains that an employee is paid on
a "salary basis" if he or she "regularly receives" a "predetermined
amount" that "is not subject to reduction because of variations in
the quality or quantity of the work performed." 29 C.F.R.
§ 541.602(a). The employee "must receive the full salary for any
week in which the employee performs any work without regard to the
number of days or hours worked." Id.

The Defendants have not met their burden of proving that Lilani was compensated on a "salary basis." Lilani testified that she was hired in June 2008 and "was to receive a monthly salary of $3,500.00" as a result of an oral agreement with the Defendants.[47] There was no written employment contract.[48] Lilani's assertion is the only evidence in the record that supports the proposition that she was hired as a salaried employee, and significantly, the Defendants argue that there is no evidence that such a contract ever existed.[49] In short, neither side has conclusively established that the contract did or did not exist.

Moreover, even if the Defendants did agree to employ Lilani, they have not established that the parties agreed from the outset that Lilani was to be given a salary of at least $455 per week. Although a monthly salary of $3,500 would equate to approximately $808 dollars a week, the parties do not dispute that Lilani never received such a payment. The record instead shows that Lilani was paid $3,600 over seven months in 2008 (June through December), and

---

[47]Plaintiff's Responses to Defendant's Interrogatories, Exhibit B to Defendants' Summary-Judgment Motion, Docket Entry No. 36, p. 5; Deposition of Shahnaz Lilani, Exhibit C to Defendants' Summary-Judgment Motion, Docket Entry No. 36, pp. 43:25–44:2, 69:1–4.

[48]Deposition of Shahnaz Lilani, Exhibit C to Defendants' Summary-Judgment Motion, Docket Entry No. 36, p. 68:1–3.

[49]Defendants' Summary-Judgment Motion, Docket Entry No. 36, ¶ 26.

$1,800 over two months in 2009 (January and February),[50] for an average weekly income of approximately $150 during Lilani's "employment" at Preschool Inc.

The Defendants argue that they have met their burden because Lilani "contends she was supposed to be paid a salary of $3,500 per month regardless of the number of hours she worked."[51] They argue that the court should focus on the amount that the employee was "supposed to be" compensated instead of the amount the employee was actually compensated, or else "the exemption would swallow the rule" by allowing any salaried employee to fall outside the exemption as long as the employer failed to pay an average of $455 per week.[52] In advancing this argument, however, the Defendants disregard the significant fact issues concerning the existence and nature of the alleged employment agreement as well as their prior contention that there is no evidence they ever agreed to pay Lilani $3,500 a month. The court concludes that the evidence before the court is insufficient to satisfy the Defendants' burden of proving the first requirement of both exemptions. The court will therefore

---

[50]Plaintiff's 2008 W-2 From Preschool Inc., Document 42-16 to Plaintiff's Summary-Judgment Response, Docket Entry No. 42, p. 1; Pay Stubs for Shahnaz Lilani, Exhibit A to Defendants' Reply to Plaintiff's Response to Their Motion for Summary Judgment ("Defendants' Summary-Judgment Reply"), Docket Entry No. 48, pp. 3-6.

[51]See Defendants' Summary-Judgment Motion, Docket Entry No. 36, ¶ 45.

[52]Defendants' Summary-Judgment Reply, Docket Entry No. 48, ¶ 34.

deny the Defendants' Summary-Judgment Motion with respect to the FLSA claims for unpaid minimum wages and for overtime compensation.

3.   Fraud

Lilani alleges that the Defendants "made false representations to Plaintiff in order to induce Plaintiff to loan Defendants the money" and that the "Defendants never intended to pay back Plaintiff for the loan."[53]

(a)   Applicable Law

To prevail on a fraud claim under Texas common law a plaintiff must prove that (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff actually and justifiably relied on the representation; and (7) the representation caused the plaintiff injury.  Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001); Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter, 607 F.3d 1029, 1032-33 (5th Cir. 2010). A plaintiff's reliance on the defendant's false statement must be reasonable.   Ortiz v. Collins, 203 S.W.3d 414, 421 (Tex.

---

[53]Plaintiff's Second Amended Complaint, Docket Entry No. 45, ¶¶ 22-24.

App.—Houston [14th Dist.] 2006, no pet.).   Fraudulent inducement
"is a particular species of fraud that arises only in the context
of a contract and requires the existence of a contract as part of
its proof."  Haase v. Glazner, 62 S.W.3d 795, 798 (Tex. 2001).   In
a fraudulent inducement claim the elements of fraud must be
established as they relate to an agreement between the parties.  Id.
at 798-99.

> (b)   Genuine Issues of Fact Preclude Summary Judgment
>       With Respect to Lilani's Fraud Claim

The Defendants argue that they are entitled to summary
judgment on this claim because Lilani has not identified specific
false statements the Defendants made to her that induced her to
provide any money to the Defendants.[54]  The evidence in the record,
however, could lead a reasonable jury to conclude that the
Defendants fraudulently induced Lilani to lend them money without
intending to ever repay Lilani.

The record lends support for Lilani's claim that the Nooralis
falsely represented to Lilani that the money transfer was a loan
instead of an investment.  Lilani testifies in her affidavit, and
the Defendants do not dispute, that she transferred approximately
$90,000 to the Defendants between June and September of 2008.[55]  The
payments were made through a series of checks, which were not made

---

[54]Defendants' Summary-Judgment Motion, Docket Entry No. 36,
¶ 27.

[55]Affidavit of Shahnaz Lilani, Document 42-2 to Plaintiff's
Summary-Judgment Response, Docket Entry No. 42, ¶ 7.

out to Preschool Inc., as one might expect had Lilani been
investing in Preschool Inc., but instead were made out to Zeenat
Noorali, Busy Bee Day School, and Nizari Credit Union.[56]  One check
that is made out to Busy Bee Day School, dated June 27, 2008,
states on the memo line, "loan to Busy Bee."[57]  Another, made out
to Nizari Credit Union, dated September 3, 2008, also says "loan"
on the memo line.[58]  Moreover, Preschool Inc.'s 2008 balance sheet
shows that the corporation was indebted to Shahnaz Lilani in the
amount of $94,000.[59]  Based on this evidence, a reasonable jury
could believe Lilani's allegation that the Nooralis asked Lilani
for loans and not for an investment in their business.  Even if a
jury were to believe that Lilani was aware that the money transfer
was an investment in Preschool Inc., it could reasonably conclude
that the Nooralis falsely represented that 50% of Preschool Inc.
was worth approximately $90,000 when they knew it was actually
worth only $77,000, the amount they paid Roshanara Lilani.[60]  Lilani
raises genuine fact issues as to whether the Defendants
fraudulently induced her into paying them a substantial sum of

---

[56]Checks from Shahnaz Lilani, Document 42-9 to Plaintiff's
Summary-Judgment Response, Docket Entry No. 42, pp. 2-4.

[57]Id. at 2.

[58]Id. at 4.

[59]Busy Bee Day Care School Balance Sheet as of December 31,
2008, Document 42-7 to Plaintiff's Summary-Judgment Response,
Docket Entry No. 42, p. 1.

[60]Deposition of Zeenat Noorali, Document 42-1 to Plaintiff's
Summary-Judgment Response, Docket Entry No. 42, pp. 31:13-32:24.

money.   The court will therefore deny the Defendants' Summary-Judgment Motion with respect to Lilani's fraud claim.


    4.   <u>Unjust Enrichment</u>

    Lilani alleges that because she has "not received any payment from the Defendants," the "Defendants have received the benefit [of] all monies and services provided by Plaintiff and will be unjustly enriched if allowed to retain the balance due and owing to Plaintiff."[61]

    The majority of Texas appellate courts hold that unjust enrichment is not an independent cause of action.   <u>See, e.g.</u>, <u>Barnett v. Coppell N. Tex. Court, Ltd.</u>, 123 S.W.3d 804, 816 (Tex. App.—Dallas 2003, pet. denied); <u>Mowbray v. Avery</u>, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. stricken and rev. denied).[62]   This view prevails among Texas courts notwithstanding the fact that the Texas Supreme Court, in <u>HECI Exploration C. v. Neel</u>, 982 S.W.2d 881 (Tex. 1998), refers to unjust enrichment as a "cause of action," a "remedy," and a "basis for recovery."  <u>Id.</u> at 891.  Most Texas courts have nevertheless read these statements as

_____

    [61]Plaintiff's Second Amended Complaint, Docket Entry No. 45, ¶¶ 26–29.

    [62]Both parties state that unjust enrichment is not an independent cause of action in Texas even though at least one Texas court of appeals has held otherwise.  <u>See, e.g.</u>, <u>Pepi Corp. v. Galliford</u>, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).   The court will side with the majority view that unjust enrichment is merely an element of restitution for the purposes of this motion.

reiterations of the well-established principle that an equitable suit for restitution may be raised against a party based on the theory of unjust enrichment.  <u>See</u> <u>Mowbray</u>, 76 S.W.3d at 680 & n.25. The theory may apply when a defendant obtains a benefit from the plaintiff "by fraud, duress, or the taking of an undue advantage." <u>Heldenfels Bros., Inc. v. City of Corpus Christi</u>, 832 S.W.2d 39, 41 (Tex. 1992).

The Defendants argue they are entitled to summary judgment on the restitution claim because the "Plaintiff has no evidence the Defendants were unjustly enriched by her investment in Preschool[] Inc."[63] As discussed previously, a genuine issue of material fact exists as to whether the money transfer was a loan or an investment and as to whether the Defendants fraudulently induced Lilani to transfer the money by telling her it was a loan without intending to repay Lilani.  The parties do not dispute that the Defendants have not repaid any of the funds.  If a reasonable trier of fact concludes the parties did not enter into a valid loan agreement, the trier of fact could alternatively conclude that the Defendants have been unjustly enriched.  The court will therefore deny the Defendants' Summary-Judgment Motion on the restitution (unjust enrichment) claim with respect to the money transfer.  For the reasons explained above, the court will grant the motion to the extent Lilani seeks restitution for unpaid minimum wages and for

---

[63]Defendants' Summary-Judgment Motion, Docket Entry No. 36, ¶ 32.

overtime compensation because those claims are preempted by the FLSA.

     5.   <u>Quantum Meruit</u>

Lilani alleges that because "Plaintiff provided all monies and services for the Defendants under the contract" and because the "Defendants have received a benefit by virtue of these monies and services" without compensating the Plaintiff, the Plaintiff is "entitled to fair and reasonable compensation for the services performed and monies provided."[64]   Under Texas common law a plaintiff seeking recovery under the theory of quantum meruit must prove that (1) valuable services were rendered or materials furnished, (2) for the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him, and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.  <u>Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.</u>, 787 S.W.2d 942, 944 (Tex. 1990).

The court will grant the Defendants' Summary-Judgment Motion with respect to Lilani's quantum-meruit claim for two reasons. First, lending money to another is not by itself considered a "valuable service" or "materials furnished."  <u>Cristobal v. Allen</u>,

------

[64]Plaintiff's Second Amended Complaint, Docket Entry No. 45, ¶¶ 30-33.

2010 WL 2873502, at *6 (Tex. App.—Houston [1st Dist.] July 22, 2010, no pet.).  Second, to the extent Lilani's quantum-meruit claim seeks payment for employment services rendered, such claim is preempted, as explained above, by the FLSA.

6.  <u>Promissory Estoppel</u>

Lilani alleges that the "Defendants made promises to Plaintiff, which Defendants knew would induce Plaintiff and indeed caused the Plaintiff to lend money to the Defendants," that the "Defendants have refused [to] abide by their promises," that "Plaintiff has suffered extensive damages," and that the court must therefore enforce the Defendants' promises under the theory of promissory estoppel.[65]

The Defendants argue that promissory estoppel cannot be the basis for affirmative relief.[66]  Even though promissory estoppel is primarily a defensive theory, Texas law provides that it is an available cause of action for a promisee who acted to its detriment in reasonable reliance on an otherwise unenforceable promise. <u>Pair-A-Dice Acquisition Partners, Inc. v. Bd. of Tr. of Galveston Wharves</u>, 185 F.Supp.2d 703, 708 (S.D. Tex. 2002) (citing <u>Wheeler v. White</u>, 398 S.W.2d 93, 96–97 (Tex. 1965)).  Generally, promissory estoppel is a viable alternative to a breach-of-contract claim.

───────────

[65]Plaintiff's Second Amended Complaint, Docket Entry No. 45, ¶¶ 35–38.

[66]Defendants' Summary-Judgment Motion, Docket Entry No. 36, ¶¶ 39–40.

Allied Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).  To prevail on a claim of promissory estoppel, a plaintiff must prove (1) a promise, (2) foreseeability by the defendant that the plaintiff would rely upon the promise, and (3) reliance upon the promise to the plaintiff's detriment.  Id. (citing English v. Fisher, 660 S.W.2d 521, 524 (Tex. 1983)).

     The Defendants also argue that even if the theory is applicable, there is no evidence that any of the Defendants ever made promises or false statements, and that promissory estoppel, as a theory that is equitable in nature, should not be applied in this case because Lilani knew the risk associated with her investment.[67] As stated previously, a reasonable jury could conclude, based on the record, that at the time of the money transfer the Defendants promised Lilani they would repay her the full amount, and that Lilani relied on this promise to her detriment.  The checks from Lilani to Busy Bee Day School and the credit union have the word "loan" written on the memo line,[68] and the Nooralis testified in their depositions that in prior instances they had borrowed money from family members, including Lilani, without documentation, and had paid the money back.[69]  This evidence could lead a reasonable

---

     [67]Id. ¶¶ 39-40.

     [68]Checks from Shahnaz Lilani, Document 42-9 to Plaintiff's Summary-Judgment Response, Docket Entry No. 42, pp. 2-4.

     [69]Deposition of Zeenat Noorali, Document 42-1 to Plaintiff's Summary-Judgment Response, Docket Entry No. 42, pp. 38:9-40:12;

jury to conclude that the Defendants promised to repay the funds, even in light of Lilani's deposition testimony that she could not recall any false statements the Nooralis made before she transferred the first payment.[70]   The Defendants repeatedly argue that Lilani's money transfer was an investment in Preschool Inc., but they do not provide any documentation of such an investment.

The court will therefore deny the Defendants' Summary-Judgment Motion with respect to Lilani's alternative promissory-estoppel claim because there are genuine issues of fact with respect to each element of the claim.   The court will grant the motion to the extent it seeks recovery for inadequate wages and overtime compensation because such claims are preempted by the FLSA.


7.   Piercing the Corporate Veil

Lilani alleges that because Zeenat Noorali, as "the sole shareholder, officer and director" of Preschool Inc., "did not keep her personal property separate from that of Defendant Preschool[] Inc.," "used the corporation for her personal purposes," undercapitalized the corporation, and used Preschool Inc. as her "alter ego," the court should pierce the corporate veil to hold Zeenat Noorali individually liable for the debt Preschool Inc. owes

---

Deposition of Saleem Noorali, Document 42-10, Docket Entry No. 42, p. 61:1-25.

[70]See Deposition of Shahnaz Lilani, Exhibit C to Defendants' Summary-Judgment Response, Docket Entry No. 36, pp. 109:10-110:4.

Lilani.[71]  Since Lilani alleges facts relating only to one Defendant — Zeenat Noorali — the court will grant the Defendants' Summary-Judgment Motion on Count Seven to the extent it seeks recovery from Defendant Saleem Noorali.

> Under Texas law
>
> a shareholder "may not be held liable to the corporation or its obligees with respect to . . . any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the [share]holder . . . is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetuate a fraud, or other similar theory."

Tex. Bus. Orgs. Code § 21.223(a)(2). As an exception to this rule, a shareholder may be held liable if the "obligee demonstrates that the [share]holder . . . caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the [share]holder." Id. § 21.223(b).  Therefore, to prevail on this claim, Lilani must prove that (1) she was an obligee of Preschool Inc.; (2) Zeenat Noorali was a shareholder, (3) Zeenat Noorali "caused" Preschool Inc. to be used "for the purpose of perpetrating" an "actual fraud" on Lilani, and (4) Zeenat Noorali perpetrated an actual fraud on Lilani. Id.  See also Shandong Yinquang Chem. Indus. Joint Stock, 607 F.3d at 1036 ("This

---

[71]See Plaintiff's Second Amended Complaint, Docket Entry No. 45, ¶¶ 45-48.

[piercing-the-corporate-veil] claim requires proof that [the Defendant] committed an actual fraud against [the obligee]."").

The Defendants argue that Lilani has presented "no evidence to prove Zeenat Noorali caused Preschool[] Inc. to be used to perpetrate a fraud for her direct personal benefit."[72]   Lilani's affidavit, Preschool Inc.'s balance sheet, and the checks Lilani wrote to Zeenat Noorali and Busy Bee Day School raise a genuine issue of material fact as to whether Lilani lent funds to Preschool Inc. and its primary officer, Zeenat Noorali, with the expectation she would be repaid.[73]   A reasonable jury could therefore conclude that Lilani was an obligee of Preschool Inc.   A reasonable jury could further conclude that Zeenat Noorali was both an officer of Preschool Inc. and the sole shareholder of Preschool Inc. based on Preschool Inc.'s 2008 tax return, which shows that Zeenat Noorali

---

[72]Defendants' Summary-Judgment Motion, Docket Entry No. 36, ¶ 65.   The Defendants also argue that Lilani's piercing-the-corporate-veil claim should be dismissed because the cause of action as alleged is based only on an "alter ego" theory, which is precluded by Section 21.223.   Without deciding whether the Defendants' assertion is true, the court concludes that Lilani bases her claim on multiple theories of piercing the corporate veil, including the theory that the corporation was used as a sham to perpetuate a fraud.   See S.E.C. v. Resource Development International, LLC, 487 F.3d 295, 302 (5th Cir. 2007) (stating the various theories on which a claim for piercing the corporate veil may be based, including the theory that the corporation was used "as a sham to perpetuate a fraud").

[73]Affidavit of Shahnaz Lilani, Document 42-2 to Plaintiff's Summary-Judgment Response, Docket Entry No. 42, ¶ 7; Busy Bee Day Care School Balance Sheet as of December 31, 2008, Document 42-7 to Plaintiff's Summary-Judgment Response, Docket Entry No. 42, p. 1; Checks from Shahnaz Lilani, Document 42-9 to Plaintiff's Summary-Judgment Response, Docket Entry No. 42, pp. 2-4.

owned 100% of Preschool Inc.'s stock.[74]   Finally, as discussed above, Lilani has raised a genuine issue of material fact as to whether Zeenat Noorali committed fraud by persuading Lilani to lend money to Preschool Inc., knowing the money would not be repaid. The Court will therefore deny the Defendants' Summary-Judgment Motion with respect to Lilani's claim for piercing the corporate veil against Zeenat Noorali.


**C.  Shareholder Claims**

Alternatively, Lilani alleges that if it is determined that the money transfer was an investment, she became a shareholder of Preschool Inc., and the Defendants have failed to provide Lilani with accountings for fundamental transactions and have failed to issue share certificates.[75]

---

[74]Preschool Inc.'s 2008 Tax Forms, Document 42-3 to Plaintiff's Summary-Judgment Response, Docket Entry No. 42, p. 7; Renewal Application and Management Plan for Child Care Centers, Document 42-14 to Plaintiff's Summary-Judgment Response, Docket Entry No. 42, p. 9.

[75]Id. ¶¶ 55-64.  The court is not persuaded by the Defendants' argument that Lilani's shareholder claims are an attempt to "have it both ways," Defendants' Summary-Judgment Motion, Docket Entry No. 36, ¶ 66, and that Lilani should be "judicially estopped" from alleging claims as a shareholder of Preschool Inc., Defendants' Summary-Judgment Reply, Docket Entry No. 48, ¶¶ 10-11.  Lilani clearly states that such claims are pleaded alternatively in case the trier of fact concludes that the money transfer was an investment. See Plaintiffs' Second Amended Complaint, Docket Entry No. 45, ¶ 50.

### 1.   Failure to Account

Lilani alleges that the Defendants are liable for selling the business and receiving cash proceeds from third parties without providing to Lilani an accounting for "these fundamental transactions."[76]   The Defendants, without citing any authority, argue that they are entitled to summary judgment because they "do not believe a single shareholder has the authority to request a Court to order a corporation to provide an accounting of a transaction."[77]   Notwithstanding the fact that the Defendants' position is contradicted by Texas statute, see Tex. Bus. Orgs. Code § 21.218(c) (permitting a court to compel a corporation to produce "books and records of accounts" and other records to be examined by a shareholder), the Defendants' argument is irrelevant to Lilani's claim that the Defendants failed to provide an accounting to Lilani of the "fundamental transaction" Preschool Inc. entered into when it leased the "usage" and "operation" of the business in February of 2009.[78]

The Defendants' argument that Lilani fails to cite legal authority in support of her claim, although correct, is inconsistent with the Defendants' summary-judgment burden.   The

---

[76]Plaintiff's Second Amended Complaint, Docket Entry No. 45, ¶¶ 54-59.

[77]Defendants' Summary-Judgment Response, Docket Entry No. 36, ¶ 27.

[78]See Busy Bee Property and Fixture Lease, Document 42-11 to Plaintiff's Summary-Judgment Response, Docket Entry No. 42, p. 1.

court will not dismiss a claim for which neither party has cited appropriate legal authority when the court's own investigation has disclosed a viable theory.   Because the Defendants have not demonstrated why they are entitled to judgment as a matter of law, the court will deny the Defendants' Summary-Judgment Motion as to Count Eight of Lilani's Second Amended Complaint.

2.   <u>Failure to Issue Shares</u>

Lilani also alleges that if she was a shareholder of Preschool Inc., the Defendants are liable for failing to deliver shareholder certificates.   The Defendants argue they are entitled to summary judgment because Lilani admits she never owned stock in Preschool Inc. and never requested stock certificates.[79]   Lilani's deposition testimony, however, should be viewed in accordance with her alternatively pled causes of action.   To review:   Lilani alleges that the money transfer was a loan, not an investment.   The Defendants argue that the money transfer was an investment, not a loan.   Neither party has submitted evidence of a written loan agreement or, if it was an investment, any documentation showing Lilani's relationship with Preschool Inc. — *i.e.*, shareholder, co-owner, etc. — after she made the investment.   Lilani alleges that if it is determined that the money transfer was an investment, she had no knowledge of that fact at the time she transferred the

---

[79]Defendants' Summary-Judgment Motion, Docket Entry No. 36, ¶ 75.

funds, which explains her deposition testimony, and that Preschool Inc. was required to deliver to her the certificates of the shares to which she was entitled as a 50% shareholder.

The Texas Business Organizations Code provides that the ownership interests in a for-profit corporation generally must be certificated.  Tex. Bus. Orgs. Code § 3.201(b).  "A domestic entity shall deliver a certificate representing a certificated ownership interest to which the owner is entitled."  Id. § 3.204.  A reasonable jury could conclude, based on the record, that Preschool Inc. did not deliver to Lilani the shareholder certificates to which she was entitled if, as the Defendants assert, she owned 50% of Preschool Inc.  Because the Defendants do not cite to any legal authority in support of their summary-judgment arguments, the court concludes they have not met their summary-judgment burden and will deny the Defendants' Summary-Judgment Motion as to Lilani's claim for failure to issue shares.

**D.    Damages**

The court is not persuaded by the Defendants' summary-judgment argument that Lilani's request for punitive damages should be dismissed because she stated in her deposition that she was not seeking punitive damages.[80]  The Defendants' cite to no authority in support of this argument, and moreover, they mischaracterize

---

[80]Defendants' Summary-Judgment Motion, Docket Entry No. 36, ¶ 82.

Lilani's deposition testimony.   In response to the Defendants'
counsel's question as to whether Lilani wanted "any money from the
judge or the jury to punish [the Defendants]," Lilani answered,
"No."[81]   This answer, by itself, does not express an unequivocal
desire to withdraw Lilani's punitive-damage allegations, to the
extent they may be available.   Furthermore, Lilani's Second Amended
Complaint, which includes requests for punitive damages, was
submitted to the court after Lilani's deposition was taken.   The
court will therefore deny the Defendants' Summary-Judgment Motion
with respect to Lilani's request for punitive damages.


**E.   Conclusion**

     With respect to Lilani's (1) claim for breach of the loan
agreement, (2) claims for fraud and fraudulent inducement,
(3) claims for unjust enrichment and promissory estoppel, to the
extent they seek damages relating to Lilani's alleged loan,
(4) claims under the FLSA, (6) claim to "pierce the corporate veil"
against Zeenat Noorali, and (7) claims for failure to account and
failure to issue shares, the court will deny the Defendants'
Summary-Judgment Motion.

     The court will grant the Defendants' Summary-Judgment Motion
with respect to the following claims:   (1) Lilani's common law
claims — breach of the employment contract, unjust enrichment, and

---

[81]Deposition of Shahnaz Lilani, Exhibit C to Defendants'
Summary-Judgment Response, Docket Entry No. 36, p. 105:6-9.

promissory estoppel — that seek unpaid minimum wages and overtime compensation, as they are preempted by the FLSA; (2) the quantum meruit claim in its entirety; and (3) the claims to "pierce the corporate veil" against Saleem Noorali.

## IV.  **Defendants' Motion to Quash, Motion for Protective Order and Motion for Sanctions**

Defendants move to quash a subpoena issued to Defendants' accountant seeking production of Defendants' business records, for a protection order, and for sanctions against Plaintiff's counsel for issuing the subpoena (Docket Entry No. 52).  Since the court has denied Defendants' Summary-Judgment Motion on most of the Plaintiff's claims, much of the information sought by Plaintiff could be relevant and is therefore discoverable.  Defendants also argue that the subpoena is overbroad.  Plaintiff's Response (Docket Entry No. 56) appears to narrow the information sought. Accordingly, Defendants' Motion to Quash, Motion for Protective Order and Motion for Sanctions (Docket Entry No. 52) is **DENIED**. Counsel will meet and agree on a revised subpoena identifying with greater particularity the information sought.  Plaintiff's request for attorneys' fees is **DENIED.**

## V.  **Motion to Disqualify Counsel and Motion for Sanctions**

Although the Defendants argue that Ali Zakaria and Aftab Sharif are members of the same law firm, the Defendants present no

evidence in support of this claim other than tangential statements from a web site.[82]  Plaintiff's counsel, Mr. Zakaria, responds with an affidavit denying that they are members of the same law firm and stating that he does not have access to client files or confidential information of Mr. Sharif's clients.[83]  The Defendants' Motion to Disqualify will therefore be denied.  Mr. Zakaria seeks sanctions for the Defendants' counsel for filing the motion, but because of the unclear reference to the two lawyers on the web site, the court cannot conclude the motion was brought in bad faith or was a product of otherwise sanctionable conduct.  Accordingly, the Plaintiff's Motion for Sanctions (Docket Entry No. 58) will also be denied.

## VI.  Conclusion

For the reasons explained above, the Defendants' Motion for Summary Judgment and Consolidated Brief (Docket Entry No. 36) is **GRANTED in part and DENIED in part**; Plaintiff's Opposed Motion for Leave to Supplement Plaintiff's Response to Defendants' Motion for Summary Judgment (Docket Entry No. 50) is **GRANTED**; Defendants' Motion to Quash, Motion for Protective Order and Motion for Sanctions (Docket Entry No. 52) is **DENIED**; Defendants' Motion to Disqualify Plaintiff's Counsel (Docket Entry No. 57) is **DENIED**; and

---

[82]Defendants' Motion to Disqualify Plaintiff's Counsel, Docket Entry No. 57, p. 2.

[83]Affidavit of M. Ali Zakaria, Document 58-3 to Plaintiff's Response to Defendants' Motion to Disqualify Plaintiff's Counsel, and Motion for Sanctions, Docket Entry No. 58, ¶¶ 2-4.

Plaintiff's Motion for Sanctions (Docket Entry No. 58) is **DENIED**.

**SIGNED** at Houston, Texas, on this 3rd day of January, 2011.

SIM LAKE
UNITED STATES DISTRICT JUDGE